IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Bernard Charles Foster,<br><br>                      Plaintiff,<br><br>v.<br><br>Director Tom Fox; Captain Susan Safford; Lt. Sharon Myers; Sgt. Regina Strickland; Lance Cpl. Gary Updergraff; Cpl. Harring; Cpl. Falvo; and Sgt. Lowe,<br><br>                      Defendants. | C/A No.2:11-cv-00225-JMC-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

The plaintiff, a state prisoner proceeding pro se, brought this action pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon Defendants' Motion for Summary Judgment (Dkt. No. 40).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The plaintiff brought this action on or about January 31, 2011, and he filed an Amended Complaint on or about February 28, 2011. (Dkt. No. 17.) On May 27, 2011, Defendants filed a Motion for Summary Judgment. By order filed June 1, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On or about June 22, 2011, the plaintiff filed a response opposing Defendants' Motion for Summary Judgment. (Dkt. No. 50.)

**PROCEDURAL FACTS**

Plaintiff, who is currently housed at McCormick Correctional Institution, alleges claims pursuant to 42 U.S.C. § 1983. Plaintiff alleges that he was arrested on August 10, 2010, and

booked in the J. Ruben Long Detention Center. (Am. Compl. at 1.) Plaintiff states that on December 27, 2010, he "was escorted to medical for chest pains," and when Defendant Harring "entered medical," Harring threatened Plaintiff by stating, "If you are not dying I am going to place you in B-2," the disciplinary segregation unit. (Id. at 1-2.) Plaintiff alleges that he was seen at medical by "Nurse Dawn," who examined Plaintiff and gave him medication. (Id. at 2.)

Plaintiff alleges that after he received medical attention, Officer Faulk escorted him back to Housing Unit A-1. (Id.) According to Plaintiff, Defendant Harring came by a few hours later and told Plaintiff to pack up to go to Housing Unit B-3 because Plaintiff was "too close to [Plaintiff's] wife next door (A-2)." (Id.) Plaintiff alleges that he informed Defendant Harring that Plaintiff had "enemies in B-3 and provided him with their names." (Id.) Plaintiff alleges Defendant Harring stated, "Darnelle James (enemy) does not know you." (Id.) Plaintiff states that Sergeant Lowe had Plaintiff "placed in B-4 Transition Housing Unit to allow classification to place me accordingly." (Id.)

Though Plaintiff was placed in B-4 on December 27, Plaintiff contends that on December 28, Defendant Harring returned and told Plaintiff he had two options: (a) B-3 Number 224, or (b) B-2 Number 134. (Id.) Plaintiff alleges that when he chose B-2 Number 134, Defendant Harring

> threaten to "spray my black ass and that we are Independent Republicans, and do not allow interracial relationships at J. Ruben Long." When I asked to speak with someone of higher authority, Plaintiff was placed in B-2. December 28, 2010 Defendant Harring[] refused to feed me lunch and said I was being charged because I didn't go to B-3. Plaintiff received charge papers December 28, 2010. And on December 30, 2010, Plaintiff was placed in B-3.

(Id. at 2-3.)

Plaintiff alleges that on December 30, 2010, Defendant Strickland held a hearing on the refusal charge and informed Plaintiff that he would be moved to B-3. (Id. at 3.) Plaintiff

2

alleges that he informed Defendant Strickland "that he had enemies in B-3 and provided Defendant Strickland with their names but Plaintiff was still placed in B-3." (Id.) Plaintiff states he filed a grievance on classification prior to being assaulted in B-3. (Id.)

Plaintiff contends that on December 30, 2010, when he woke up from a nap, he discovered that "a threatening letter had been placed under his door" and gave the letter to Corporal Bowers to give to Defendant Updergraff. (Id.) Plaintiff asserts he received a second threatening letter that same day. (Id. at 3-4.)

Plaintiff alleges that at 8:30, he was talking with the "guy in 211" when "another inmate came in" behind Plaintiff. (Id. at 4.) Plaintiff's Complaint states,

> When I turned around I was hit in the right eye by this inmate and dropped to my knees where I was kicked in the head several times. I stumbled out of the room where the assault occurred and made it somehow to my room. Finally, I went and reported my injury to unit Ofc. Cpl. Falvo. Plaintiff was taken to medical, seen by Nurse Dawn, who took pictures and I was transported to Conway Hospital. Upon return from the hospital Plaintiff was placed in B-2 Protective Custody. . . .

(Id.) Plaintiff alleges his roommate in B-3 told Plaintiff that Cpl. Falvo "said to him that 'If you tell me that he did this to himself I will move you to the annex." (Id.) Plaintiff claims that Defendants owe him for the damages to his face as a result of the alleged attack and that he was verbally abused and discriminated against due to his housing movement. Plaintiff seeks an award of compensatory and punitive damages. (Id. at 5.)

## **APPLICABLE LAW**

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue'

3

exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

Defendants move for summary judgment on several grounds, contending (1) they have Eleventh Amendment immunity for any claims made against them in their official capacity; (2) Defendants are entitled to qualified immunity. (See Dkt. No. 40.)

**Eleventh Amendment Immunity**

The Eleventh Amendment provides: "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State or by citizens or subjects of any foreign state." In enacting 42 U.S.C. § 1983, Congress did not intend to override the doctrine of States' sovereign immunity found in the Eleventh Amendment. Will v. Michigan Dep't of State Police, 491 U.S. 58, 67 (1989). As the Supreme Court stated in Will,

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Will, 491 U.S. at 66 (citation omitted). Although state officials "literally are persons," "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," which is "no different from a suit against the State itself."

Id. at 71. However, the Eleventh Amendment does not bar § 1983 suits against state officials sued in their individual capacities. See Hafer v. Melo, 502 U.S. 21, 31 (1991) (("We hold that state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts."); see also Lizzi v. Alexander, 255 F.3d 128, 137 (4th Cir. 2001) (overruled in part on other grounds by Nevada Dep't. of Human Resources v. Hibbs, 538 U.S. 721 (2003)).

To the extent Plaintiff brings claims against Defendants in their official capacities, those claims are barred by the Eleventh Amendment. See Will, 491 U.S. 58; see also Hafer, 502 U.S. 21. The undersigned therefore recommends granting summary judgment to Defendants on all claims against them in their official capacities.

**Qualified Immunity**

Although Defendants assert "it appears that Plaintiff has asserted official capacity claims," they address claims from an individual capacity standpoint, arguing they are entitled to qualified immunity. (See Mem. in Supp. at 5.) The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009).

### 1. Claims Related to Classification

In the case *sub judice*, Defendants contend they are entitled to qualified immunity on the claim for improper classification or discrimination in classification because "Plaintiff fails to establish a violation of a cognizable right under the first prong of the qualified immunity analysis." (Mem. in Supp. at 6.) The undersigned agrees. A prisoner has no Due Process right to be housed in any particular facility. Meachum v. Fano, 427 U.S. 215, 223-27 (1976); see also Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999) (no liberty interest created in custodial classifications); Slezak v. Evatt, 21 F.3d 590 (4th Cir. 1994); Brown v. Evatt, 322 S.C. 189, 195, 470 S.E.2d 848, 851 (1996) (South Carolina Supreme Court held that "[n]either the state statutes which create and define the powers of the SCDC nor SCDC's operational classification regulations create" a liberty interest); Curtis v. Ozmint, C/A No. 3:10-3053-CMC-JRM, 2011 WL 601259 (D.S.C. Feb. 11, 2011) (adopting and incorporating Report and Recommendation providing that "[a]lthough the Plaintiff in this case is unsatisfied with his custody classification . . . , the Defendants' classification and institutional placement of the Plaintiff have not violated his constitutional rights."); Johnson v. Ozmint, 456 F. Supp. 2d 688, 695-96 (D.S.C. 2006) (no constitutional violation when the defendant denied the plaintiff's request to be transferred to another institution). Plaintiff's claim for improper classification or discrimination in classification fails, and the undersigned therefore recommends granting summary judgment to Defendants on this claim.

### 2. Verbal Abuse Claims

Defendants also seek qualified immunity on Plaintiff's claims for verbal abuse because "Plaintiff fails to establish a violation of a cognizable right under the first prong of the qualified immunity analysis." (Mem. in Supp. at 8.) The undersigned agrees and concludes Defendants are entitled to qualified immunity on this claim. It is well settled that the use of vile and abusive language is never a basis for a civil rights action. See Henslee

v. Lewis, 153 Fed App'x 178, 180 (4th Cir. 2005) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983."); see also McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment."); Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (verbal threats causing fear for plaintiff's life not an infringement of a constitutional right).

### 3. Claim for Failure to Protect

Lastly, Defendants seek summary judgment on Plaintiff's claims against them for failure to protect "because Plaintiff fails to establish a violation of a cognizable right under the first prong of the qualified immunity analysis." (Mem. in Supp. at 7.)

Prison officials are required to protect inmates from violent attacks by other inmates. See Farmer v. Brennan, 511 U.S. 825, 833 (1994). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. In order to prove an Eighth Amendment violation for deliberate indifference to an inmate's security needs, a plaintiff must meet two requirements. "First, the deprivation alleged must be, objectively, sufficiently serious." Id. (internal quotation marks omitted). To demonstrate such an extreme deprivation, "a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks and citations omitted). The second requirement is that the prison official must have a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. To satisfy this second requirement, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety, and a prison official is deliberately indifferent if he has actual knowledge

7

of a substantial risk of harm to an inmate and disregards that substantial risk. Id. at 834, 837; see also Parrish v. Cleveland, 372 F.3d 294, 302-03 (4th Cir. 2004). Thus to be liable for failure to protect under the Eighth Amendment, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

In the case *sub judice*, there is evidence that Plaintiff suffered a serious injury (Dkt. No. 50 at 5 of 15.) The undersigned concludes, however, that there is no genuine issue of material fact regarding whether the Defendants had a sufficiently culpable state of mind. It is undisputed that prior to the alleged attack, Plaintiff "refused to be housed in unit B-3 and the reason for such refusal was that he had 'enemies' in that unit." (Mem. in Supp. at 7; see also Johnson Aff. ¶ 12.)[1] Plaintiff presents evidence that he notified prison officials that his "enemy" Darnell James was housed in Unit B-3. (Dkt. No. 50-3 at 4 of 18; Dkt. No. 50 at 4 of 15.) Plaintiff does not present evidence that he gave Defendants any other name; in fact, Plaintiff states, "Darnell James was the name given by Plaintiff to the Defendants." (Dkt. No. 50 at 4 of 15.)

The Defendants presented evidence–which Plaintiff does not dispute–that Defendants investigated Plaintiff's claim of "enemies" in Unit B-3 prior to moving Plaintiff there and determined that "no such threat existed." (Johnson Aff. ¶¶ 9-12; Dkt. No. 40-2.) Although Defendants contend Plaintiff was alone in his cell for a period of about an hour

---

[1] According to Plaintiff, Defendants have "admitted their guilt of their mistakes" by admitting that Plaintiff refused to be housed in B-3 due to "enemies" in that unit. (Dkt. No. 50 at 10-11 of 15.) For the reasons discussed *infra*, the undersigned disagrees. In addition, Plaintiff claims numerous times that Defendants were "negligent" in placing him in Unit B-3. (See Dkt. No. 50 at 7-8 of 15.) It is well settled, however that negligence is not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328 (1986); Whitley v. Albers, 475 U.S. 312, 319 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that *Daniels* bars an action under § 1983 for negligent conduct. . . . "). To the extent Plaintiff seeks to bring state law claims (including negligence), the undersigned recommends declining to exercise jurisdiction over such claims. See 28 U.S.C. § 1367(c).

prior to the assault, Plaintiff claims that he was assaulted by other inmates. (See Johnson Aff. ¶ 13; see also Dkt. No. 50 at 3 of 15.) While Plaintiff contends he notified Defendants that Darnell James was his enemy and was housed in B-3, missing is any allegation that the identified enemy was in fact Plaintiff's alleged attacker. In addition, Johnson's Affidavit states, "[W]e intercepted a correspondence from Plaintiff to his wife wherein he disclosed that he purposefully caused an altercation and 'let the other guy win' in order to get to see his wife and also in order to later sue Horry County." (Johnson Aff. ¶ 14; Dkt. 40-2.) Specifically, Plaintiff's letter to his wife states,

> Ms. Strickland came down here and said I was moving to B-3. I told her why she said well Cpl. Haring and Captain Strafford, feel that you don't need to be nowhere near A-2. So I told her they was racist and I will file a discrimination lawsuit against the jail. So I went to B-3 and **got in a altercation on purpose and really let the other guy win**.

(Dkt. No. 40-3 at 4 of 6 (emphasis added).)[2]

Plaintiff does not dispute that he wrote this letter to his wife but instead contends Defendants "committed perjury" by stating they "intercepted" this letter because "Defendants came into her room and handcuffed her and took her letters by force." (Dkt. No. 50 at 11 of 15.) Plaintiff states the letter "was confiscated without probable cause" and was therefore "an illegal search and seizure." (Id.) Contrary to Plaintiff's beliefs, however, inmates do not have a reasonable expectation of privacy in their cells and therefore cannot be subjected to an illegal search. See Hudson v. Palmer, 468 U.S. 517, 526 (1984); see also Sturkey v. Ozmint, No. 8:08-2758-MBS, 2009 WL 2843322, at *2 (D.S.C. Aug. 31, 2009) ("Prisoners

---

[2]It appears Plaintiff's references to racial discrimination arise because Plaintiff and his wife are an interracial couple. He states, "My question would be why would the Plaintiff['s] wife only be singled out and why was only her mail targeted." (Dkt. No. 50 at 11 of 15.) As noted above, Plaintiff's wife was incarcerated at the same institution as Plaintiff during the time in question.

have no legitimate expectation of privacy and the Fourth Amendment's prohibition on reasonable searches and seizures does not apply in the prison context.").

Given the undisputed evidence that Plaintiff gave the name "Darnell James" as his enemy in Unit B-3, that Defendants investigated Plaintiff's claim of "enemies" and found none, and that Plaintiff authored a letter to his wife stating that he started the altercation on purpose and "let the other guy win," the undersigned concludes there is no genuine issue of material fact as to whether Defendants had a sufficiently culpable state of mind to satisfy the requirements set forth in Farmer. The undersigned therefore recommends finding Defendants are entitled to qualified immunity and granting Defendants' Motion for Summary Judgment on this claim. See Farmer, 511 U.S. at 844-45 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."); Hopkins v. Maryland, No. Civ. A. WMN-99-2216, 2000 WL 1670991, at * (D.Md. Sept. 26, 2000) (concluding the defendants were entitled to qualified immunity where (a) the plaintiff had not been the subject of specific threats; (b) there was no evidence that the risk of an attack at the facility was "pervasive;" and (c) the plaintiff did not belong to a category of inmates identified as "vulnerable"); Blankenship v. Virginia, 432 F.Supp.2d 607, 616 (E.D. Va. 2006) (granting summary judgment to a former prison counselor who had direct knowledge of the prisoner's fear but who notified his supervisor of the prisoner's fear and scheduled the prisoner to be transferred to a more secure pod; the court stated the counselor "responded reasonably" to ensure the prisoner's health and "did not, as a matter of law and fact, expose [the prisoner] to a substantial risk of serious damage to his future health").

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. No. 40) be GRANTED.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks  
United States Magistrate Judge

November 4, 2011  
Charleston, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).